Filed 2/21/14  P. v. Ramirez CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>EDGAR RAMIREZ,<br><br>　　　Defendant and Appellant. | B243291<br><br>(Los Angeles County<br>Super. Ct. No. BA382225) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County.  Stephen A. Marcus, Judge.  Affirmed.

　　　Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie A. Miyoshi and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

　　　_____

Defendant Edgar Ramirez appeals from the judgment entered following a jury trial in which he was convicted of attempted murder, committing a lewd act on a child under the age of 15, possession of obscene matter depicting a minor, and two counts of continuous sexual abuse of a minor under the age of 14.

Defendant contends his sentence of life without possibility of parole (LWOP) for one of the continuous abuse counts violated the ex post facto prohibitions of the state and federal Constitutions because the abuse began before the effective date of Penal Code section 667.61, subdivision (j)(1),[1] which increased the maximum possible sentence from 25 years to life to LWOP. We do not agree. A new or amended statute may be applied in the context of continuous sexual abuse of a child if the abuse continues on or after the effective date of the statute. The undisputed evidence in this case established beyond a reasonable doubt that defendant continued to have sexual intercourse with his 13-year-old daughter after the effective date of section 667.61, subdivision (j)(1).

Defendant also contends that application of section 667.61, subdivision (j)(1) violated both his due process right to notice and statutory pleading requirements. Although the information did not mention subdivision (j)(1) of section 667.61, we conclude that its allegation that defendant was subject to the harsher sentencing scheme set forth in section 667.61 along with all facts upon which application of section 667.61, subdivision (j)(1) depended satisfied both due process and statutory pleading requirements.

Defendant further contends the restitution fine imposed upon him violated his right to a jury trial under *Southern Union Co. v. United States* (2012) 567 U.S. __ [132 S.Ct. 2344] (*Southern Union*). We disagree. Defendant's felony convictions triggered the trial court's statutory duty to impose a restitution fine in the range of $200 to $10,000. The trial court did not make any factual findings that increased the potential fine beyond what the jury's verdict allowed. *Southern Union* is inapplicable.

---

[1] Undesignated statutory references pertain to the Penal Code.

2

## BACKGROUND

The charges in this case arose from about seven years of sexual abuse by defendant of his daughter J.R. and about one year of sexual abuse of his younger daughter K.R. Defendant's conduct toward J.R. formed the basis for his convictions of attempted murder (count 1), one of the counts of continuous sexual abuse (count 2), and committing a lewd act on a child under the age of 15 (count 5). Defendant raises no issues regarding these counts or the sentence on these counts. Accordingly, we merely summarize the evidence regarding defendant's abuse of K.R.

### 1.    Continuous sexual abuse of K.R.

K.R. was born in January of 1997. She began living with defendant, J.R., and her brother when she was seven. By February of 2010, both K.R.'s brother and J.R. had moved away, leaving 13-year-old K.R. alone with her father. Around March of 2010, defendant began touching K.R.'s breasts when she was asleep. A few days later, defendant began having sexual intercourse with K.R. "[a]lmost every day." Defendant also orally copulated K.R. and forced her to orally copulate him more than three times, but K.R. could not remember how frequently that had happened.

K.R. feared defendant because she had seen him hit J.R. Defendant told K.R. she could be his wife and his daughter. He made her wear J.R.'s lingerie and took photographs of her "private parts."

In July of 2010, K.R. had an abortion at a Planned Parenthood clinic. She did not tell the clinic staff that defendant had impregnated her, but instead made up a story about having a boyfriend her own age. The doctor told her not to have sex for three weeks after her abortion. Although she relayed this information to defendant, he resumed having sex with her a "couple of days later."

By December of 2010, defendant had again impregnated K.R. and she returned to Planned Parenthood for another abortion. The physician who performed the second abortion testified that K.R. was approximately six weeks pregnant. After the abortion, he implanted an intrauterine device to prevent additional pregnancies.

3

K.R. testified that she did not have sex with anyone other than defendant during the time she lived with him.

Defendant was arrested on or before March 16, 2011, after J.R. reported his conduct toward her to the police.

## 2. Verdict and sentencing

The jury convicted defendant of attempted murder (count 1, pertaining to J.R.'s fetus), continuous sexual abuse of a minor under the age of 14 (count 2, pertaining to J.R.), continuous sexual abuse of a minor under the age of 14 (count 3, pertaining to K.R.), possession of obscene matter depicting a minor (count 4), and committing a lewd act on a child under the age of 15 (count 5, pertaining to J.R.). With respect to both continuous sexual abuse convictions (counts 2 and 3) and the lewd act conviction (count 5), the jury found true a section 12022.7, subdivision (a) allegation that defendant personally inflicted great bodily injury. The jury also found true, with respect to both continuous sexual abuse convictions (counts 2 and 3), allegations that defendant committed an offense specified in section 667.61, subdivision (c) against more than one victim (§ 667.61, subd. (e)(4)) and that in the commission of the offenses, defendant personally inflicted great bodily injury on J.R. and K.R. (§ 667.61, subd. (d)(6)).

The prosecutor acknowledged in her sentencing memorandum that section 667.61 was inapplicable to continuous sexual abuse of a minor under 14 when defendant committed that offense against J.R. Accordingly, the trial court struck the jury's section 667.61 findings with respect to count 2.

The trial court sentenced defendant to LWOP for the continual sexual abuse of K.R. (count 3), pursuant to section 667.61, subdivision (j)(1), plus a consecutive aggregate determinate term of 24 years consisting of terms of 19 years for the continual sexual abuse of J.R. with great bodily injury enhancement (count 2), 2 years 4 months for attempted murder (count 1), 1 year for possession of obscene matter depicting a minor (count 4), and 1 year 8 months for committing a lewd act on a child under the age of 15 with great bodily injury enhancement (count 5).

4

**DISCUSSION**

**1.    Defendant's LWOP term did not violate constitutional ex post facto prohibitions.**

Section 667.61, also known as the "One Strike" law, "sets forth an alternative, harsher sentencing scheme" for certain sexual offenses, including a violation of section 288.5, committed under specific circumstances set forth in subdivisions (d) and (e) of the statute.  (*People v. Mancebo* (2002) 27 Cal.4th 735, 738 (*Mancebo*).)  Defendant challenges the LWOP sentence imposed for count 3 pursuant to section 667.61, subdivision (j)(1).  That sentence was premised upon his infliction of great bodily injury on K.R. in the commission of the violation of section 288.5, a factor listed in section 667.61, subdivision (d)(6).[2]

The information alleged that count 3, the continuous sexual abuse of a minor under 14 charge pertaining to K.R., was committed "[o]n or between January 14, 2010 and January 13, 2011."  At the beginning of this time period, section 667.61 did not authorize an LWOP term, only terms of 15 years to life or 25 years to life.

The Legislature amended section 667.61 in 2010 by adding subdivision (j)(1), which provides, in pertinent part, as follows:  "Any person who is convicted of an offense specified in subdivision (c), with the exception of a violation of subdivision (a) of Section 288, upon a victim who is a child under 14 years of age under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e), shall be punished by imprisonment in the state prison for life without the possibility of parole."  The amendment became effective on September 9, 2010—part way through the period alleged in count 3.

---

[2] Section 667.61, subdivision (d)(6) provides, "The defendant personally inflicted great bodily injury on the victim or another person in the commission of the present offense in violation of Section 12022.53, 12022.7, or 12022.8."  As previously noted, the jury found a section 12022.7, subdivision (a) allegation true with respect to count 3.

5

Defendant contends the trial court's application of section 667.61, subdivision (j)(1) to him violated constitutional prohibitions on ex post facto laws because subdivision (j)(1) "did not apply during the first nine months of the one-year time frame alleged for count 3" and the jury "likely based its verdict, at least in part, on an act or acts committed before this section became effective."

### a. Ex post facto principles

The ex post facto clause of the federal Constitution prohibits legislation that (1) punishes as a crime an act that was innocent when it was committed; (2) makes more burdensome the punishment for a crime, after its commission; or (3) deprives a defendant of any defense available according to law at the time when the charged crime was committed. (*Collins v. Youngblood* (1990) 497 U.S. 37, 42 [110 S.Ct. 2715].)

California's ex post facto clause is interpreted in the same manner as the federal clause. (*People v. Grant* (1999) 20 Cal.4th 150, 158 (*Grant*).) "[T]he primary purpose of the ex post facto clauses in the federal and state Constitutions is to ensure 'that legislative Acts give *fair warning* of their effect . . . .'" (*Id.* at p. 162.) "The critical question is whether the law changes the legal consequences of acts completed before its effective date." (*Weaver v. Graham* (1981) 450 U.S. 24, 31 [101 S.Ct. 960].)

There can be no dispute that an LWOP term is more burdensome than a term of 25 years to life (the greatest possible imprisonment under section 667.61 prior to its 2010 amendment) because the latter leaves open the possibility of parole. The critical issue in the present case is instead whether the offense of continuous sexual abuse of K.R. may be deemed to have been completed before September 9, 2010. If the offense was completed by that date, the LWOP term provided in the amendment to section 667.61 cannot constitutionally be applied to defendant.

### b. The application of ex post fact principles to section 288.5

"Section 288.5 punishes a continuous course of conduct, not each of its three or more constituent acts. [Citations.] A continuous course of conduct offense cannot logically be 'completed' until the last requisite act is performed. Where an offense is of a

6

continuing nature, and the conduct continues after the enactment of a statute, that statute may be applied without violating the ex post facto prohibition." (*People v. Palacios* (1997) 56 Cal.App.4th 252, 257 (*Palacios*).)

In *Palacios*, the court concluded that application of section 2933.1, which reduced the conduct credits a defendant could earn while serving a sentence for violation of section 288.5, did not violate constitutional ex post facto prohibitions where the conduct underlying the defendant's conviction began before, and ended after, the effective date of section 2933.1. (*Palacios*, *supra*, 56 Cal.App.4th at pp. 256–258.)

Similarly, in *Grant*, *supra*, 20 Cal.4th at pages 159–162, the California Supreme court concluded that section 288.5 could constitutionally be applied to sexual abuse that began before, but continued after, the date section 288.5 went into effect. The court explained, "[S]ection 288.5 gave 'fair warning' to those engaged in the sexual abuse of a child before the statute's enactment that they would be punished under the new law if they continued the sexual abuse after section 288.5 took effect. Those who engaged in child molestation before the effective date of section 288.5, but not thereafter, are not subject to prosecution for continuing sexual abuse. But those who, like defendant, chose to continue such conduct after the effective date of section 288.5 were on notice that they would be subject to prosecution under that section." (*Grant*, at p. 162.)

Thus, when the continuous sexual abuse begins before, but continues after, the effective date of a new statute or amendment to a statute, the new provision may be applied without violating constitutional prohibitions on ex post facto laws.

**c.      Defendant's LWOP sentence did not violate constitutional prohibitions on ex post facto laws.**

The trial court did not violate the ex post facto clauses by applying section 667.61, subdivision (j)(1) to defendant. Although his continuous sexual abuse of K.R. began prior to September 9, 2010, the undisputed evidence demonstrated beyond a reasonable doubt that the sexual abuse continued after that date. K.R. testified that defendant had sex with her almost every day after J.R. moved away. K.R. did not have sex with anyone

else. According to the physician who performed an abortion on K.R. on December 8, 2010, K.R. was about six weeks pregnant, which means defendant impregnated her around the last week of October, more than one month after the effective date of section 667.61, subdivision (j)(1). As stated in *Grant*, *supra*, 20 Cal.4th at page 162, the enactment of section 667.61, subdivision (j)(1) placed defendant on notice that if he continued to sexually abuse K.R. after September 8, 2010, he was subject to an LWOP sentence.

Citing *People v. Hiscox* (2006) 136 Cal.App.4th 253 (*Hiscox*) and *People v. Riskin* (2006) 143 Cal.App.4th 234 (*Riskin*), defendant argues that this court cannot determine whether the jury based its verdict on acts that occurred before or after the effective date of section 667.61, subdivision (j)(1).

Neither *Hiscox* nor *Riskin* involved a continuous course of conduct offense. Both instead involved sentencing under section 667.61 for violations of section 288, subdivisions (a) and (b) (lewd act on an child under the age of 14) that were alleged to have occurred during a date range that straddled the effective date of section 667.61. (*Hiscox*, *supra*, 136 Cal.App.4th at pp. 257–258; *Riskin*, *supra*, 143 Cal.App.4th at p. 237.)

In *Hiscox*, the "evidence did not reliably connect" the 11 section 288 charges to any dates other than the four-year time frame alleged in the information, and the jury was neither asked to make findings about the dates of the offenses nor instructed that "findings under section 667.61 were restricted to offenses committed on or after" its effective date. (136 Cal.App.4th at pp. 258, 261.) The appellate court concluded that sentencing Hiscox under section 667.61 violated the ex post facto clauses because the prosecutor failed to establish "that any particular offense was committed when section 667.61 was in effect." (136 Cal.App.4th at p. 262.) The court explained, "Since the jury was not asked to make findings on the time frame within which the offenses were committed, the verdicts cannot be deemed sufficient to establish the date of the offenses unless the evidence leaves no reasonable doubt that the underlying charges pertained to

events occurring on or after November 30, 1994. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].) It would be inappropriate for us to review the record and select among acts that occurred before and after that date, or to infer that certain acts probably occurred after that date." (136 Cal.App.4th at p. 261.)

The court in *Riskin* relied upon *Hiscox* and similarly concluded that the prosecutor had not proved beyond a reasonable doubt that the defendant committed the section 288 offense on or after the effective date of section 667.61. (*Riskin*, *supra*, 143 Cal.App.3d at p. 245.) The court noted that the victim's testimony was inconsistent about the timing of the "various acts—*one* of which acts, without specifying which, the jury found to be the count III forcible lewd act." (*Ibid.*)

Although the jury here did not make a finding that defendant's continuous sexual abuse of K.R. continued on or after September 9, 2010, the uncontradicted evidence established, beyond a reasonable doubt, that it did. K.R. testified that defendant had sex with her almost every day, and the evidence regarding her December 8, 2010 abortion necessarily established that defendant impregnated her in late October of 2010, after section 667.61, subdivision (j)(1) became effective. Thus, based upon the evidence and the charge, defendant's case is distinguishable from *Hiscox* and *Riskin*.

Accordingly, we conclude that application of section 667.61, subdivision (j)(1) to defendant did not violate the ex post facto clauses of the federal or state Constitutions.

**2.     Defendant's LWOP sentence did not violate his due process right to notice or statutory pleading requirements contained in section 667.61.**

Defendant further contends that his sentence under section 667.61, subdivision (j)(1) violated his due process right to notice because the information did not mention subdivision (j)(1) or LWOP and in court the prosecutor stated that his maximum exposure was 50 years to life (calculated as 25 years to life for each of the continuous sexual abuse charges) plus 14 years for the other counts. He argues that the "first mention" of 667.61, subdivision (j)(1) was in the prosecutor's sentencing memorandum filed six days before

9

the sentencing hearing. Defendant also argues the failure to plead section 667.61, subdivision (j)(1) violated the pleading requirement set forth in section 667.61 itself.

**a.      Statutory pleading requirements**

Section 667.61 applies "only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to this section, and is either admitted by the defendant in open court or found to be true by the trier of fact." (§ 667.61, subd. (o), formerly subd. (j).)

"[A] valid accusatory pleading need not specify by number the statute under which the accused is being charged." (*People v. Thomas* (1987) 43 Cal.3d 818, 826; § 952.) In addition, "No accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." (§ 960.)

**b.      Statutory pleading requirements were satisfied**

As previously noted, effective September 9, 2010, section 667.61, subdivision (j)(1) states, in pertinent part, "Any person who is convicted of an offense specified in subdivision (c), with the exception of a violation of subdivision (a) of Section 288, upon a victim who is a child under 14 years of age under one or more of the circumstances specified in subdivision (d) . . . shall be punished by imprisonment in the state prison for life without the possibility of parole."

Count 3 in the information alleged defendant committed the offense of continuous sexual abuse in violation of section 288.5 and that victim K.R. was "a child under the age of 14 years . . . ." The information also included the following allegation: "It is further alleged, within the meaning of Penal Code section 667.61 (a) and (d), . . . as to count(s) 2 and 3 that the following circumstances apply: The defendant personally inflicted great bodily injury on the victim in the commission of the present offense, in violation of Penal Code section 12022.53, 12022.7 or 12022.8."

Thus, the information clearly alleged the "existence of any circumstance specified in subdivision (d)" ("defendant personally inflicted great bodily injury on the victim"),

10

along with the other factors triggering application of section 667.61, subdivision (j)(1), that is, defendant committed a violation of section 288.5, an offense specified in subdivision (c)(9), against a child under the age of 14. The California Supreme Court has held that "the specific numerical subdivision of a qualifying One Strike circumstance" under section 667.61, need not be pleaded to satisfy the statutory pleading requirements, as long as "an information afford[s] a One Strike defendant fair notice of the qualifying statutory circumstance or circumstances that are being pled, proved, and invoked in support of One Strike sentencing." (*Mancebo*, *supra*, 27 Cal.4th at pp. 753–754.) The Information in this case met that standard by pleading every factor necessary to the application of section 667.61, subdivision (j)(1), even though it did not refer to that particular subdivision.

Thus, all statutory pleading requirements were satisfied.

**c.      Constitutional notice requirements**

"Both the Sixth Amendment of the federal Constitution and the due process guarantees of the state and federal Constitutions require that a criminal defendant receive notice of the charges adequate to give a meaningful opportunity to defend against them." (*People v. Seaton* (2001) 26 Cal.4th 598, 640.) This notice requirement extends to "allegations that will be invoked to increase the punishment for his or her crimes." (*People v. Houston* (2012) 54 Cal.4th 1186, 1227.) "[A] defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*Mancebo*, *supra*, 27 Cal.4th at p. 747 [information alleging use of a gun supported One Strike sentencing; trial court substituted a different factual basis that had not been pleaded for One Strike term and separate gun-use enhancements].)

**d.      Constitutional notice requirements were satisfied**

As noted, the information alleged every fact necessary to the application of the mandatory LWOP sentence specified in section 667.61, subdivision (j)(1). Ideally the prosecutor would have mentioned the applicability of section 667.61, subdivision (j)(1)

somewhere in the information or before trial, but her failure to do so did not deprive defendant of fair notice of "the specific sentence enhancement allegations" that were used to increase punishment for his crimes. The information clearly informed defendant that, if the jury convicted him of the continuous sexual abuse of K.R. and found the section 667.61, subdivision (d) great bodily injury allegation true, he would be sentenced under the harsher sentencing scheme provided by section 667.61. The information fully informed him of the factual basis for application of section 667.61, subdivision (j)(1), that is, infliction of great bodily injury in the commission of a violation of section 288.5 against a child under the age of 14. The applicability of section 667.61, subdivision (j)(1) to count 3 would have been obvious from a mere perusal of the section 667.61. Notably, section 667.61, subdivision (a), which was cited in the information, expressly refers to subdivision (j).

Defendant has not cited any authority for the proposition that due process required citation of the precise subdivision under which he was ultimately sentenced, but instead relies upon *People v. Arias* (2010) 182 Cal.App.4th 1009, in which the defendant was convicted of two counts of "first degree attempted murder" and sentenced to consecutive terms of life in prison pursuant to section 664, subdivision (a), notwithstanding the failure of the prosecutor to charge defendant with willful, deliberate, and premeditated attempted murder. (*Arias*, at pp. 1011–1012, 1016–1017.) The appellate court concluded the sentences were unauthorized and imposed in violation of both the pleading requirement set forth in section 664, subdivision (a), and due process. (*Arias*, at pp. 1016–1017.) It noted, "[N]either the information nor any pleading gave defendant notice that he was potentially subject to the enhanced punishment provision for attempted murder under section 664, subdivision (a)." (*Arias*, at p. 1019.)

Here, however, the information alleged all of the factual predicates for the sentence imposed and alleged that defendant was subject to sentencing under section 667.61 on the basis of those facts. It thus provided defendant with sufficient notice of the legal and factual bases for the sentence imposed.

12

The present case is more similar to *People v. Neal* (1984) 159 Cal.App.3d 69 (*Neal*), in which the information charged the defendant with several sex crimes and a deadly weapon enhancement under section 12022, subdivision (b). The jury convicted the defendant and found the section 12022, subdivision (b) enhancement true. Instead of imposing a one-year section 12022, subdivision (b) enhancement, the trial court imposed a three-year enhancement under section 12022.3, a more specific statute applying only to violent sex crimes. (*Neal*, at pp. 71–72.) The appellate court concluded this did not violate due process. It stated, "The purpose of the due process notice requirement is to afford an accused ""'a reasonable opportunity to prepare and present his defense and not to be taken by surprise by evidence offered at his trial.'"" [Citations.] Here the information fully informed appellant that he was charged with using a deadly weapon, 'to wit, broken glass,' in the commission of the sex offenses. He therefore could not be surprised by proof of such use, nor can he say that the preparation of his defense to meet the facts would have been different if the information had alleged use under the provisions of section 12022.3, rather than section 12022, subdivision (b)." (*Neal*, at pp. 72–73.)

As in *Neal*, the information in this case fully informed defendant that he was charged with committing continuous sexual abuse of a child under the age of 14, an offense within the scope of section 667.61, including subdivision (j)(1) of that section, and inflicting great bodily injury in the commission of that offense. The information further informed defendant that the prosecution sought sentencing under section 667.61. Defendant could not be surprised when he was sentenced under section 667.61, subdivision (j)(1) for the commission of continuous sexual abuse of a child under the age of 14, with infliction of great bodily injury in the commission of that offense. Defendant had full notice of every fact upon which this sentence was based, as well as the prosecutor's intent that he be sentenced harshly under section 667.61, and he has not suggested any way in which the preparation of his defense to meet these facts would have been different if the information had also cited subdivision (j)(1) of section 667.61.

13

The prosecutor's misstatement at the outset of trial regarding defendant's sentencing exposure did not negate the sufficiency of notice to defendant. The pleadings placed defendant on notice that the prosecutor sought sentencing under section 667.61, and subdivision (j)(1) of that statute provided the mandatory penalty of LWOP for a violation of section 288.5 with a finding of great bodily injury. The prosecutor's misstatement did not estop her from seeking that mandatory penalty or in any way alter the trial court's obligation to impose it.

Accordingly, we conclude defendant's due process right to notice was not violated.

**3.      The restitution fine did not violate defendant's right to a jury trial.**

The trial court imposed a $10,000 restitution fine pursuant to section 1202.4, subdivision (b), which provides, "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record."

Defendant contends that the trial court's imposition of a restitution fine in excess of the  statutory minimum ($200 at the time of defendant's arrest) violates his Sixth Amendment right to a jury trial as interpreted by *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348] (*Apprendi*) and *Southern Union*, *supra*, 567 U.S. __ [132 S.Ct. 2344].

**a.      Right to a jury trial as interpreted by *Apprendi* and its progeny**

In *Apprendi*, *supra*, 530 U.S. 466, the United States Supreme Court held that the Sixth Amendment right to a jury trial requires that any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum, be submitted to a jury and be proved beyond a reasonable doubt. (*Id.* at p. 490.)

*Blakely v. Washington* (2004) 542 U.S. 296 [124 S.Ct. 2531] clarified that the relevant "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." (*Id.* at p. 303.)  The key inquiry is whether the court had the authority to impose the particular sentence in question without finding any additional facts or only

14

upon making some additional factual finding. (*Id.* at p. 305.) If any additional finding of fact is required, *Apprendi* applies. (*Blakely*, at p. 305.)

Nonetheless, *Apprendi* does not limit "the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." (*United States v. Booker* (2005) 543 U.S. 220, 233 [125 S.Ct. 738] (maj. opn. of Stevens, J.) (*Booker*).)

*Southern Union*, *supra*, 132 S.Ct. at pages 2348–2349, held that *Apprendi* applies to criminal fines. There, a corporation was convicted of a single count of violating a federal statute that authorized a fine of $50,000 for each day of violation. The jury was not asked to determine the duration of the violation. The trial court imposed a fine of $6 million based upon the "on or about" date range alleged in the indictment and included in the jury's verdict form. (132 S.Ct. at p. 2349.) The Supreme Court concluded that the trial court had violated *Apprendi* by making "factual findings that increased both the 'potential and actual' fine the court imposed," thereby "enlarg[ing] the maximum punishment . . . beyond what the jury's verdict or the defendant's admissions allow[ed]." (132 S.Ct. at p. 2352.) Consistent with *Booker*, however, the court noted that "the routine practice of judges' imposing fines from within a range authorized by jury-found facts" "poses no problem under *Apprendi* because the penalty does not exceed what the jury's verdict permits." (132 S.Ct. at p. 2352, fn. 5.)

### b. Pertinent provisions of section 1202.4

At the time of defendant's arrest, section 1202.4, subdivision (b)(1) provided, in pertinent part, "The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony . . . ."

Section 1202.4, subdivision (b)(2) sets forth a formula trial courts may use to calculate the restitution fine within the range permitted by subdivision (b)(1): "In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of

15

imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."

Section 1202.4, subdivision (d) provides, "In setting the amount of the fine pursuant to subdivision (b) in excess of the minimum fine pursuant to paragraph (1) of subdivision (b), the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime. Those losses may include pecuniary losses to the victim or his or her dependents as well as intangible losses, such as psychological harm caused by the crime. Consideration of a defendant's inability to pay may include his or her future earning capacity. A defendant shall bear the burden of demonstrating his or her inability to pay. Express findings by the court as to the factors bearing on the amount of the fine shall not be required. A separate hearing for the fine shall not be required."

## c. Imposition of a $10,000 restitution fine did not violate defendant's right to a jury trial.

California courts have consistently rejected contentions that *Apprendi* applies to the determination of a section 1202.4, subdivision (b) restitution fine. (*People v. Urbano* (2005) 128 Cal.App.4th 396, 405–406 (*Urbano*); *People v. Kramis* (2012) 209 Cal.App.4th 346, 351–352 (*Kramis*).)

*Urbano*, *supra*, 128 Cal.App.4th 396, rejected a contention that a $3,800 restitution fine calculated pursuant to the formula set forth in section 1202.4, subdivision (b) violated the defendant's right to a jury trial under *Apprendi*. Citing *Booker*, *supra*, 543 U.S. 220, the court noted, "[T]he holdings of *Blakely* and *Apprendi* do not apply when the exercise of judicial discretion stays within a sentencing range authorized by statute." (*Urbano*, *supra*, at p. 405) The $3,800 fine was "within the range authorized by statute," and thus did not violate *Blakely* or *Apprendi*. (*Urbano*, at p. 406.)

16

*Kramis*, *supra*, 209 Cal.App.4th 346, rejected a contention that a $10,000 restitution fine violated the defendant's right to a jury trial under *Apprendi* and *Southern Union*. The court held that "[n]othing in *Southern Union*" affected the continuing validity of *Urbano*, and *Apprendi* and *Southern Union* are inapplicable to the trial court's exercise of discretion within a statutory range, such as imposing a restitution fine in an amount between $200 and $10,000. (*Kramis*, at p. 351.) It stated, "The $10,000 section 1202.4, subdivision (b) restitution fine imposed in the present case was within that statutory range. The trial court did not make any factual findings that increased the potential fine beyond what the jury's verdict—the fact of the conviction—allowed. Therefore, *Apprendi* and its progeny do not preclude its imposition." (*Kramis*, at pp. 351–352.)

Defendant does not address *Urbano*, but argues that *Kramis* was wrongly decided because the court "did not address the requirements of section 1202.4, subdivision (d), which appear to set $200 . . . as the maximum fine absent consideration of additional relevant factors—factors which were given no consideration by the court in this case, and which also give rise to the application of *Apprendi*." Defendant is wrong. Section 1202.4, subdivision (b)(1) establishes a range with $200 as the *minimum* fine, and $10,000 as the *maximum* fine. The court's exercise of discretion in determining the amount of the fine within the statutory range falls within *Booker*, *supra*, 543 U.S. at page 233 and *Southern Union*, *supra*, 132 S.Ct. at page 2352, footnote 5.

Because defendant was convicted of four felonies, the trial court was statutorily required to impose a restitution fine of not more than $10,000. "The trial court did not make any factual findings that increased the potential fine beyond what the jury's verdict—the fact of the conviction—allowed. Therefore, *Apprendi* and its progeny do not preclude its imposition." (*Kramis*, *supra*, 209 Cal.App.4th at p. 352.)

17

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

MILLER, J. *

We concur:

CHANEY, Acting P. J.

JOHNSON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18